**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen C. Dean, | ) CIV 07-1437-PHX-SRB (MHB) |
| Petitioner, | ) **REPORT AND RECOMMENDATION** |
| vs. | ) |
| Dora B. Schriro, et al., | ) |
| Respondents. | ) |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

## BACKGROUND

Petitioner Stephen C. Dean, who is confined in the Arizona State Prison Complex-Kingman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) in which he challenges his state court convictions. Respondents filed an Answer (Doc. #11) on December 11, 2007, and Petitioner filed his "Rebuttal" to Respondents' Answer (Doc. #13) on January 25, 2008.

On June 14, 2004, a Maricopa County grand jury indicted Petitioner on one count of theft of means of transportation, a class 3 felony, and one count of shoplifting, a class 1 misdemeanor. (Doc. #11, Exh. A.) The State also filed an allegation that Petitioner had seven historical priors. (Doc. #11, Exh. B.)

On September 29, 2004, at a trial management conference before Judge Warren Granville, counsel for Petitioner, Wendy Hernandez, informed the court that she may have prosecuted Petitioner in 1999 when she worked for the Maricopa County Attorney's Office. (Doc. #11, Exh. C at 4.) The court told counsel and Petitioner that this was "something we

1  need to check." (Doc. #11, Exh. C at 5.)  Petitioner subsequently told the court that he had
2  confidence in Hernandez's ability as an attorney, and that he did not have a problem
3  continuing with her as his attorney. (Doc. #11, Exh. C at 5.)

4  On October 12, 2004, at another trial management conference, Hernandez confirmed
5  that she prosecuted Petitioner in 1999 when working for the Maricopa County Attorney's
6  Office. (Doc. #11, Exh. D at 4.)  The court told Petitioner that he had the choice of having
7  a new attorney appointed to represent him, having an attorney appointed just to discuss this
8  issue with him, or continuing with Hernandez as his counsel. (Doc. #11, Exh. D at 5-6.)
9  Petitioner told the court that he preferred to retain Hernandez as his counsel because "she is
10 competent." (Doc. #11, Exh. D at 6.)  Hernandez therefore continued as counsel for
11 Petitioner. (Doc. #11, Exh. D at 6.)

12 On November 10, 2004, Petitioner, his counsel, and the prosecutor participated in a
13 settlement conference before Commissioner Colleen French. (Doc. #11, Exh. E.)  The
14 Commissioner explained the charges against Petitioner, the potential sentences he faced if
15 convicted as charged, the plea offer that had been made, and the potential consequences of
16 accepting the plea offer. (Doc. #11, Exh. E at 1-3, 6-7, 13-14, 16.)  The prosecutor stated
17 that the State was not willing to make another plea offer, and that the current plea offer
18 expired that day. (Doc. #11, Exh. E at 7, 17.)

19 On November 15, 2004, the day before trial, a trial management conference and
20 possible change of plea proceeding were held. (Doc. #11, Exh. F.)  Judge Granville began
21 a change of plea colloquy in which Petitioner plead guilty to Count 1, theft of means of
22 transportation, a class 3 nondangerous, repetitive offense, with one prior felony. (Doc. #11,
23 Exh. F at 4-14.)  After the State set forth the factual basis for the substantive offense, the
24 court reminded Petitioner that they had previously discussed the issue of Hernandez having
25 been the prosecutor in the case underlying his prior conviction, and that Petitioner had
26 waived any objection on that issue. (Doc. #11, Exh. F at 15-16.)  When the court asked
27 Petitioner if that was still his position, Petitioner responded that he had doubts regarding the
28 adequacy of his representation, and that he wanted new counsel appointed. (Doc. #11, Exh.

1  F at 16.) After further discussion, the court indicated that it was not inclined to accept the
2  plea, and that another attorney would be appointed. (Doc. #11, Exh. F at 18.) The
3  prosecutor objected, stating that the parties had engaged in numerous discussions about this
4  issue, and that there was no basis for a change of attorney the day before trial. (Doc. #11,
5  Exh. F at 18-20.) The prosecutor further explained that this because this was a "policy plea,"
6  there would be no plea offer after that day, no further discussion, no further settlement
7  conference, and that the case would be going to trial. (Doc. #11, Exh. F at 18-20.) Based
8  on Petitioner's answers to the court's questions concerning the adequecy of his counsel's
9  representation, the court vacated the change of plea, and granted Petitioner's motion to
10 change counsel. (Doc. #11, Exh. F at 21-22.)

On December 9, 2004, and January 21, 2005, the trial court granted Petitioner's motions to continue trial because new counsel had recently been appointed and was not prepared for trial. (Doc. #11, Exhs. G, H.) The court held a final trial management conference on February 24, 2005, before trial began on March 1, 2005. (Doc. #11, Exh. I.)

After a two-day trial, a jury convicted Petitioner of both counts: theft of means of transportation and shoplifting. (Doc. #11, Exh. J.) On April 6, 2005, the trial court sentenced Petitioner to a term of 8 years' imprisonment for Count 1, theft of means of transportation, with two prior felony convictions, and to a term of 6 months' imprisonment for Count 2, shoplifting.[1] (Doc. #11, Exh. K.) The court awarded Petitioner 306 days of presentence incarceration credit on both counts. (Doc. #11, Exh. K.)

On June 1, 2005, Petitioner filed a delayed notice of appeal from the judgments and sentences.[2] (Doc. #11, Exh. L.) On appeal, Petitioner argued that the prosecutor's vindictive

---

[1] The plea agreement Petitioner had been offered, and that had been withdrawn by the prosecutor on November 14, 2004, included a stipulation that he receive a sentence of imprisonment between 6 ½ and 13 years. (Doc. #11, Exh. F at 4-16.) Petitioner, therefore, could have received a longer sentence had he gone forward with his plea than he received after conviction at trial.

[2] Leave to file a delayed notice of appeal was granted on May 12, 2005. (Doc. #11, Exh. M.)

- 3 -

1 refusal to extend a plea offer when Petitioner requested a change in counsel violated his
2 constitutional rights to due process and right to counsel in violation of the Fifth, Sixth, and
3 Fourteenth Amendments to the United States Constitution, and Article 2, §§ 1, 4, 23, and 24
4 of the Arizona Constitution. (Doc. #11, Exh. N.)  In response, the State argued that
5 Petitioner had waived any claim concerning prosecutorial vindictiveness and the violation
6 of his constitutional rights because he failed to raise such a claim in the trial court. (Doc.
7 #11, Exh. O.) In Petitioner's reply brief, he argued that he had demonstrated the fundamental
8 error necessary to excuse his forfeiture of this issue. (Doc. #11, Exh. P.)

9       On January 25, 2007, the Arizona Court of Appeals issued a memorandum decision
10 affirming Petitioner's convictions and sentences. (Doc. #11, Exh. Q.) Finding that Petitioner
11 had failed to raise this issue at trial, the Court of Appeals reviewed Petitioner's claim for
12 fundamental error. (Doc. #11, Exh. Q at 6.)  The court found that Petitioner could not
13 succeed under a fundamental error analysis because he could not prove that there was any
14 error. (Doc. #11, Exh. Q at 6.)  The court found "no indication that the State objectively
15 acted with prosecutorial vindictiveness by proceeding to trial rather than reopening plea
16 negotiations with [Petitioner] after he requested a new attorney." (Doc. #11, Exh. Q at 7, ¶
17 15.)  The court further found, based on all of the facts before it, that there was no
18 presumption of prosecutorial vindictiveness in the case. (Doc. #11, Exh. Q at 7, ¶ 15.)  The
19 court found that the State did not engage in prosecutorial vindictiveness, therefore Petitioner
20 could not establish that any error occurred, much less fundamental error; thus, Petitioner had
21 forfeited this issue on appeal. (Doc. #11, Exh. Q at 9, ¶ 18.)

22       Petitioner filed a motion for reconsideration of the Court of Appeals' decision, which
23 was denied on March 9, 2007. (Doc. #11, Exhs. R, S.) Thereafter, Petitioner filed a petition
24 for review by the Arizona Supreme Court, and Respondents filed a response. (Doc. #11,
25 Exhs. T, U.) The court denied the petition summarily on June 28, 2007, and the order and
26 mandate issued on July 31, 2007. (Doc. #11, Exhs. V, W.)

27       On July 26, 2007, Petitioner filed the current Petition for Writ of Habeas Corpus.
28 (Doc. #1.)  In his Petition, Petitioner asserts four grounds for relief; however, all of the

- 4 -

grounds for relief are essentially the same. Petitioner alleges that the prosecutor engaged in vindictiveness and violated his constitutional rights (namely, his right to conflict-free counsel), when the prosecutor refused to extend another plea offer to him after he had requested a change of counsel. Specifically, Petitioner presents the following claims:

> Ground One: "A relevant question is whether the due process Clause of the 14th Amendment is violated when a state prosecutor carries out a threat made during the change of plea negotiations; then carries out that threat, (ME B4) at each opportunity Mr. Mayer County Attorney asserted his withdraw[a]l of the plea - the timing of the withdraw[a]l of the plea gives rise to a presumption of the likelihood of vindictiveness";
>
> Ground Two: "The Sixth Amendment Rights to conflict[-]free counsel were violated when the prosecutor objected to a change in Defendant[']s counsel ordered by the judge, then as punishment for the exercise of that Right, the prosecutor pulled the already signed plea threatened and carried his threat to 'force' Defendant to jury trial - a likelihood of vindictiveness[.] Petitioner had entered a signed plea of guilt (RT, 11-15-04); and faced 'certain punishment' thus there was no need to force petitioner to a jury trial on the matter. The prosecution cannot object to the change in counsel when the court is determining whether a conflict justifies such a change and then punitively refuse to negotiate a non-trial resolution, when prosecutor fails to p[e]rsuade the court";
>
> Ground Three: "To punish a person because he has done what the law plainly allows him to do is a Due Process violation of the most basic sort, . . . and for an agent of the state to pursue a course of action whose objective is to penalize a person[']s reliance on his legal rights is not only blatantly unfair but unconstitutional";
>
> Ground Four: "In this cause the court was dealing with the state[']s unilateral imposition of a 'penalty' upon a defendant (petitioner) who[] had chosen to exercise a legal right resulted in a due process violation, that lay not in the possibility that petitioner might be deferred from the exercise of a legal right; but rather in the danger that the state might be retaliating against the accused for cho[o]sing to exercise a constitutional right to counsel."

(Doc. #1.)

## DISCUSSION

In their Answer, Respondents contend that the claims presented in Petitioner's habeas petition are procedurally defaulted. Respondents argue that because Petitioner cannot establish the requisite cause and prejudice or a fundamental miscarriage of justice, he is not entitled to federal habeas review of these procedurally defaulted claims.

### A.     Exhaustion and Procedural Default

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994). A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based. See Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001); Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). The exhaustion requirement will not be met where the petitioner fails to fairly present his claims. See Roettgen, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner. See Harris v. Reed, 489 U.S. 255, 268-70 (1989) (O'Connor, J., concurring); Rose v. Lundy, 455 U.S. 509, 519-20 (1982). If remedies are still available in state court, the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies. See id. However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted. See Teague v. Lane, 489 U.S. 288, 298-99 (1989); White v. Lewis, 874 F.2d 599, 602-05 (9th Cir. 1989). Any claim not previously presented to the state courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust current federal habeas claims would be futile. See Rules 32.1, 32.2(a) and (b), Ariz.R.Crim.P.; Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002). Moreover, a state post-conviction action is futile where it is time-

barred. See Rule 32.4(a), Ariz.R.Crim.P.; Beaty, 303 F.3d at 987. The federal court will not consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

The Court's review of the proceedings before the trial court, Arizona Court of Appeals, and Arizona Supreme Court compels the conclusion that all of Petitioner's claims as alleged in his habeas petition are procedurally defaulted.

As the Court has previously noted, in his direct appeal to the Arizona Court of Appeals and in his petition for review by the Arizona Supreme Court, Petitioner argued that the prosecutor violated his due process rights and right to counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 2, §§ 1, 4, 23, and 24 of the Arizona Constitution when the prosecutor engaged in vindictive behavior by refusing to extend a plea offer to Petitioner when Petitioner requested a change in counsel. (Doc. #11, Exhs. N, T.) In its answers the State argued that Petitioner forfeited and waived any claim, absent fundamental error, concerning prosecutorial vindictiveness and the violation of his constitutional rights because he did not raise this issue in the trial court. (Doc. #11, Exhs. O, U.) The Arizona Court of Appeals agreed. The court specifically stated that because Petitioner failed to raise the issue at trial (and hence, forfeited it on appeal), it was only reviewing the claim for fundamental error. (Doc. #11, Exh. Q.) The court affirmed Petitioner's convictions and sentences, finding that no fundamental error occurred. (Doc. #11, Exh. Q.)

Fundamental error review does not exhaust claims that were never fairly presented for purposes of federal habeas review. See Poland (Michael) v. Stewart, 117 F.3d 1094, 1105 (9th Cir. 1997) (Arizona's process of fundamental error review does not excuse a petitioner's failure to present federal claims to the state's highest court); Martinez-Villareal v. Lewis, 80 F.3d 1301, 1306 (9th Cir. 1996) (rejecting argument that review for fundamental error by Arizona Supreme Court prevents procedural preclusion). The Arizona Supreme Court's

denial of Petitioner's petition for review affirmed the Arizona Court of Appeals' determination that Appellant forfeited this claim on appeal – procedurally barring the claim from further review. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

Petitioner has also failed to show "cause and prejudice" for his procedural default, or that the failure to review the claim would result in a fundamental "miscarriage of justice." Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that prevented him from following the procedural rules of the state court and fairly presenting his claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [the prisoner's] efforts to comply with the State's procedural rule. Thus, cause is an external impediment such as government interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Regarding the "miscarriage of justice," the Supreme Court has made clear that a fundamental miscarriage of justice exists when a Constitutional violation has resulted in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

Petitioner has not established cause for his failure to raise these claims in state court, nor has he shown actual prejudice. Petitioner has also not demonstrated that a miscarriage of justice would result if these issues are not addressed. Thus, Petitioner's claims concerning prosecutorial vindictiveness and the violation of his constitutional rights are procedurally defaulted and the Court will recommend that these claims be denied.

## CONCLUSION

Having determined that Petitioner's claims as alleged in his habeas petition are procedurally defaulted, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

1  This recommendation is not an order that is immediately appealable to the Ninth
2  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
3  Appellate Procedure, should not be filed until entry of the district court's judgment.  The
4  parties shall have ten days from the date of service of a copy of this recommendation within
5  which to file specific written objections with the Court.  <u>See</u> 28 U.S.C. § 636(b)(1);
6  Fed.R.Civ.P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a
7  response to the objections. Failure to timely file objections to the Magistrate Judge's Report
8  and Recommendation may result in the acceptance of the Report and Recommendation by
9  the district court without further review.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114,
10 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the
11 Magistrate Judge will be considered a waiver of a party's right to appellate review of the
12 findings of fact in an order of judgment entered pursuant to the Magistrate Judge's
13 recommendation.  <u>See</u> Fed.R.Civ.P. 72.

14  DATED this 11th day of February, 2008.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge